Our second case this morning is the United States v. Auston McLain. Mr. Roy, good morning. Thank you. Excuse me. Good morning. May it please the court. Opposing counsel, attorney Mike Roy on behalf of appellant Auston McLain. McLain's trial and conviction suffers from a number of infirmities. I understand that some of our individual complaints, such as talking about hearsay rulings, may seem a bit nitpicky. But as a whole, everything together is the cumulative effect of these errors that we think warrants reversal. And I think what differentiates this from other cases where people have claimed cumulative error is that all the errors are linked together. They all involve the same element in dispute at trial, whether Auston McLain had the intent to commit the offense. First error being the expert testimony, which went directly towards intent. Second error, again, the hearsay ruling is directly about intent. The jury instruction we challenged is about intent. And then the prosecutorial misconduct claim. Again, that goes to Auston McLain's testimony, which was about intent. So it's all linked together as sort of one cohesive argument. I plan to focus on what I think first is the biggest issue, the expert testimony, unless this court has any questions about other claims. So our view is that this is a legal error. The district court erred not in weighing the evidence under Rule 4.3. This is not an on-the-spot judgment where the court said the prejudice outweighs the probative value. Reading the district court's reasoning as a whole, the implication is that the court applied what I thought was a bright-line rule, that any expert testimony on intent needed to directly negate specific intent, rather than just be towards an intermediate fact that could be used to generate a chain of inferences towards negating intent. What was the precise purpose of—what was the reason why the defendant wanted to offer this testimony? What does it go to? Sure. And there's three different purposes for the testimony, but the one regarding negating intent, that's that McLain, you know, he had his own version of events testifying what his motive was going there. And, I mean, as the government points out, this is a very common thing for defendants to say in these types of cases. It's completely irrational that someone would say, oh, I met an underage teen on a dating app. I went to rescue them, right? No rational person would take those steps. So I guess the reason I ask is because the briefs seem to focus not on whether— not on McLain's capacity to have that initial bad decision, but his—after forming that purported intent, that is to go and rescue Cody, that he then took steps that were nonsensical. Exactly. Right? And so does—is the expert designed to go to both issues or one of those issues? The expert's definitely not going towards a diminished capacity defense. It's not there to say that— So it's not the first one. It's the second one. Yes. It's purely that he—once he had his intent, he did an irrational set of steps to do it. And, I mean, there is evidence that—quite a lot of evidence, actually, that he had plenty of reason to know the profile was fake, which is pretty strange. I mean, they searched his phone afterwards, found the GPS spoofing app. There was evidence at trial that if you use the GPS spoofing app, you can tell that all these brand-new profiles are in the same house. I mean, a normal person would look at this and be like, why would you go there? That's obviously fake, and most likely it's a sting operation. Well, I guess the—you know, reading the district court's kind of decision process as a whole, I think it may have been different if Dr. Wilson's opinion was exactly that.